UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRANDON E. HACIA,

    Plaintiff,

vs.                                        Case No: 8:13-cv-1257-T-33MCR

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Plaintiff alleges he became disabled on August 20, 2009 (Tr. 14, 133-38). A hearing was held before the assigned Administrative Law Judge ("ALJ") on January 30, 2012, at which Plaintiff was represented by an attorney (Tr. 29-59). The ALJ found Plaintiff not disabled from August 20, 2009 through February 16, 2012, the date of his decision (Tr. 11-24).

In reaching the decision, the ALJ found Plaintiff had the severe impairments of primary generalized epilepsy and a cognitive disorder (Tr. 16). The ALJ found Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations: "climbing of ladders, ropes, and

---

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation. Failure to do so shall bar the party from a *de novo* determination by a district judge of an issue covered herein and from attacking factual findings on appeal. *See* 28 U.S.C. §636(b)(1); Rule 72(b), Fed. R. Civ. P.; and Local Rule 6.02(a), United States District Court for the Middle District of Florida.

1

scaffolding are precluded as well as all exposure to work hazards, dangerous moving machinery, or unprotected heights. He is limited to simple routine work tasks" (Tr. 18).

Plaintiff has exhausted administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the briefs and the applicable law. For the reasons stated herein, the undersigned respectfully **RECOMMENDS** the Commissioner's decision be **AFFIRMED**.

**I.     Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable

to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II.     Summary of Medical Evidence

Plaintiff began having seizures in December of 2002 (Tr. 269, 384).  In December 2009, Plaintiff was admitted to Tampa General Hospital for two days for evaluation and EEG-video monitoring (Tr. 267-76).  Plaintiff reported he had experienced four generalized tonic-clonic seizures[2] in the past year and all of them were related to missing medication (Tr. 269).  Dr. Ali Bozorg, M.D. attended to Plaintiff.  Dr. Bozorg concluded Plaintiff was most likely suffering from "primary ('idiopathic') generalized epilepsy (IGE)," which "is genetic and is typically easily controlled with appropriate medications."  *Id.*  Dr. Bozorg noted this type of epilepsy is sensitive to sleep deprivation and often photosensitive.  *Id.*  Plaintiff was "poorly controlled" on the medications Trileptal, Lamictal and Keppra, so Dr. Bozorg recommended Plaintiff slowly taper down the Trileptal and increase the Lamictal.  *Id.*  Dr. Bozorg reported he counseled Plaintiff "on the need to take his AEDs [antiepileptic drugs] as prescribed to minimize the risk of breakthrough seizures."  *Id.*

Plaintiff followed up with Dr. Bozorg on May 14, 2010 (Tr. 331).  Plaintiff reported he had two generalized tonic-clonic seizures in February and March, "which may have been related to skipping the morning dose of his AEDs."  *Id.*  Plaintiff denied side effects

---

[2] A generalized tonic-clonic seizure, also known as a grand mal seizure, "features loss of consciousness and violent muscle contractions."  Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/grand-mal-seizure/basics/definition/con-20021356 (last visited May 9, 2014).

3

from the AEDs and reported sleeping at least eight hours at night. *Id.* Dr. Bozorg's impression was primary generalized epilepsy "[w]ell controlled on LTG [lamotrigine] and LVT [levetiracetam]" with "breakthrough seizures [that] may have been in setting of skipping AEDs" (Tr. 331-32). Dr. Bozorg recommended Plaintiff continue with his current dose of AEDs and strongly encouraged Plaintiff to take his AEDs as prescribed (Tr. 332). Plaintiff was instructed to avoid sleep deprivation and excess alcohol consumption. *Id.*

On November 6, 2010, state agency medical consultant Dr. Cristina Rodriguez, M.D. completed a Physical Residual Functional Capacity Assessment (Tr. 348-55). Dr. Rodriguez opined Plaintiff could never climb ladders, ropes or scaffolds, and he should avoid even moderate exposure to hazards such as machinery and heights due to his seizure disorder (Tr. 349-53).

Plaintiff returned to Dr. Bozorg on November 16, 2010 (Tr. 346-47). Plaintiff's mother reported he was having about one generalized tonic-clonic seizure per month (Tr. 346). Plaintiff had not called Dr. Bozorg's office because "they were hoping to qualify for disability and unless if [sic] his seizures are occurring, he will not qualify for disability." *Id.* Plaintiff reported he felt sleepy during the day and napped once or twice per day. *Id.* Dr. Bozorg's impression was intractable primary generalized epilepsy with monthly breakthrough generalized tonic-clonic seizures. *Id.* Dr. Bozorg noted "patient and his mom did not call us because they were hoping he would qualify for disability with breakthrough seizures." *Id.* Dr. Bozorg noted Plaintiff endorsed good adherence to his prescribed antiepileptic drug therapy. *Id.* Dr. Bozorg strongly urged Plaintiff and his

4

mother to call if Plaintiff continued to have breakthrough seizures, and he reviewed the risk of death related to generalized tonic-clonic seizures. *Id.*

Dr. Bozorg completed a Seizure Residual Functional Capacity Questionnaire on November 17, 2010 (Tr. 359-67). Dr. Bozorg diagnosed intractable primary generalized epilepsy and monthly generalized tonic-clonic seizures (Tr. 359). Plaintiff's prognosis was fair. *Id.* Dr. Bozorg reported Plaintiff experiences seizures once per month that start without warning and last about one minute (Tr. 360). The seizures usually occur during the day and cause confusion, exhaustion, irritability, severe headache and muscle strain (Tr. 360-61). These manifestations last forty minutes to one hour (Tr. 361). Dr. Bozorg reported Plaintiff complies with taking his medication, and he experiences the side effects of lethargy, lack of alertness and poor appetite. *Id.* Dr. Bozorg opined Plaintiff would need to lie down during a work shift once per month (Tr. 362). Dr. Bozorg opined Plaintiff's symptoms frequently interfere with attention and concentration, and Plaintiff has a slight limitation in his ability to deal with work stress (Tr. 363). Finally, Dr. Bozorg opined Plaintiff would need to take unscheduled breaks once per month to rest for a couple of hours (Tr. 365).

During a follow-up with Dr. Bozorg on March 22, 2011, Plaintiff reported he was tolerating his medications well without side effects (Tr. 378). He had two generalized tonic-clonic seizures in the past four months, with the last one in January. *Id.* Dr. Bozorg noted Plaintiff was "dependent on his parents for assistance medically" and "would benefit from continuing on his parents' medical insurance" (Tr. 379).

Plaintiff returned to Dr. Bozorg on August 11, 2011 (Tr. 376-77). He reported he had a seizure in June after skipping his morning dose and possibly the evening dose of

5

his medication (Tr. 376). Dr. Bozorg noted Plaintiff was "doing well with occasional breakthrough seizures due to nonadherence." *Id.*

Plaintiff attended a neuropsychological evaluation with Dr. Eric Rinehardt, Ph.D. on August 16, 2011 (Tr. 371-75). Dr. Rinehardt reported "[n]europsychological test results were abnormal with primary deficits in the domains of verbal memory, language, processing speed, aspects of executive functioning (phonetic fluency) and fine motor coordination (relative dysfunctions with the dominant right hand)" (Tr. 373). Dr. Rinehardt opined the test results were consistent with left hemisphere dysfunction in addition to possible frontal dysfunction. *Id.* Dr. Rinehardt diagnosed mild cognitive impairment secondary to epilepsy. *Id.* He thought Plaintiff was a good candidate for surgery from a neuropsychological standpoint. *Id.* Dr. Rinehardt opined "motivational factors may contribute to [Plaintiff's] performance" but test results suggested cognitive dysfunction likely contributed as well. *Id.* Dr. Rinehart suggested Plaintiff would benefit from academic accommodations and external memory devices. *Id.*

Plaintiff returned to Dr. Bozorg the next month on September 20, 2011 (Tr. 369-70). Plaintiff reported he had been taking his AEDs as prescribed, although not always on schedule, and he had not had any seizures since his last visit (Tr. 369). Dr. Bozorg noted Plaintiff was "doing well and is seizure free on LTG and LVT." *Id.* On September 27, 2011, Dr. Bozorg wrote a letter on Plaintiff's behalf (Tr. 384-85). In the letter, which takes the form of Dr. Bozorg's treatment records and is addressed "To Whom It May Concern," Dr. Bozorg restated his findings from Plaintiff's previous visit (Tr. 384). Dr. Bozorg added, "[Plaintiff] is unable to support himself at this time due to condition," and

6

he planned to "[p]rovide documentation to support continuation on parent's insurance plan." *Id.*

### III.   Issues on Appeal

Plaintiff raises two issues on appeal.  First, Plaintiff argues the ALJ erred by not giving great weight to the decision of the Department of Defense that Plaintiff was entitled to Tricare medical coverage as a disabled adult dependent as of November 21, 2008.  Second, Plaintiff argues the ALJ erred by failing to give great weight to the opinion of Dr. Ali M. Bozorg, Plaintiff's treating physician.

**A. Whether the ALJ erred by not giving great weight to the decision of the Department of Defense that Plaintiff was entitled to Tricare medical coverage as a disabled adult dependent as of November 21, 2008**

Plaintiff submitted evidence that the Department of Defense ("DOD") found him to be an "incapacitated child over 21 years of age," which made him eligible to continue receiving Tricare medical coverage through his parents.  Specifically, Plaintiff submitted a statement dated January 21, 2012 from his father, Joseph E. Hacia Jr., that he applied through the Department of the Army to have Plaintiff's eligibility for Tricare medical coverage continued under the Incapacitation Dependency eligibility standards (Tr. 231).  According to Mr. Hacia, the Department of the Army approved Plaintiff's eligibility "[w]ith [Plaintiff's] current physician's statement that he has a physical incapacity and disability that existed before his twenty-first birthday." *Id.*  Attached to Mr. Hacia's statement is an extract of Army Regulation 600-8-14 – Identification Cards for Members of the Uniformed Services, their Family Members, and Other Eligible Personnel ("Army Regulation 600-8-14") and a document titled "Incapacitation Dependency Packet" (Tr. 232-43).  Also attached is a "Notice Concerning Claimed

7

Dependency Under the Dependents' Medical Care Act," which is dated September 27, 2011 (Tr. 244). The Notice indicates dependency was established for Bandon E. Hacia as an incapacitated child and directs the local identification office to update DEERS. *Id*. The final attachment to Mr. Hacia's statement is a copy of Plaintiff's "Application for Uniformed Services Identification Card DEERS Enrollment," dated November 16, 2010 (Tr. 245). A stamp on the form indicates "Dependency Care is established for Medical care in US and Civilian Facilities." *Id*. Mr. Hacia's statement does not identify which physician's statement was used to support Plaintiff's application for an identification card.[3]

The Dependents' Medical Care Act of 1956 created a uniform program of medical and dental care for members and certain former members of the uniformed services and for their dependents. A "dependent" includes a child over the age of twenty-one who "is incapable of self-support because of a mental or physical incapacity that occurs while a dependent of a member or former member . . . and is . . . in fact dependent on the member or former member for over one-half of the child's support." 10 U.S.C. § 1072(2)(D)(iii). The statute does not define the term "incapacity."

An incapacitated adult dependent is eligible for a DOD identification card, which is used as proof of identity and DOD affiliation for medical care. 32 C.F.R. §§ 161.6, 161.9. The Regulations provide that verifying officials must inspect identity and eligibility documentation to ensure that identification cards are provided only to those sponsored and with a current affiliation with the DOD. The Regulations define "eligibility

---

[3] A treatment record from Dr. Bozorg dated September 27, 2011 appears to take the form of a letter (Tr. 384-85). The treatment record is directed "To Whom It May Concern" and includes a statement that Plaintiff "is unable to support himself at this time due to condition."

8

documentation" to include a "statement of incapacity from a physician or personnel or medical headquarters of sponsor's parent uniformed service." 32 C.F.R. § 161.3.

Army Regulation 600-8-14 describes the eligibility criteria and required documentation for issuance of identification cards for incapacitated children over twenty-one years of age (Tr. 232-43). Eligibility criteria require the child be: (1) unmarried; (2) incapable of self-support because of a mental or physical incapacity that existed before the child's twenty-first birthday or twenty-third if enrolled as a full-time student; and (3) dependent on the sponsor for over one-half of his or her support (Tr. 238). Required documentation includes a "current physician's statement (dated within 90 days of application)." *Id.* The medical statement must "verify[ ] the dependent's medical incapacitation is permanent or temporary" (Tr. 242).

Plaintiff argues the ALJ failed to properly evaluate the DOD's decision that he is entitled to Tricare medical coverage as an incapacitated adult dependent. Plaintiff contends the ALJ's conclusory statement that the findings made by the DOD are based on different standards from those under the Social Security Act is not supported by substantial evidence and the ALJ should have evaluated those relative standards.

The Social Security Regulations provide that a decision by a governmental agency about whether a claimant is disabled is not binding on the Social Security Administration, because the Commissioner's disability determination must be based on social security law. 20 C.F.R. § 404.1504. However, SSR 06-03p provides:

> [W]e are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental . . . agencies. Therefore, evidence of a disability decision by another governmental . . . agency cannot be ignored and must be considered. . . . [T]he adjudicator should explain the

consideration given to these decisions in the notice of decision for hearing cases.

*Id.* Thus, although a decision by another government agency, such as the DOD, about whether a claimant is disabled is not binding on the Commissioner, the Commissioner must nevertheless evaluate the decision and explain the consideration given to the decision.

The Eleventh Circuit has held, "The findings of disability by another agency, although not binding on the [Commissioner] are entitled to great weight." *Falcon v. Heckler*, 732 F.2d 827, 831 (11th Cir. 1984) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983)). "Even when an agency's definition of disability differs from that of social security law, if the agency's disability definition is construed in a similar manner as the definition of disability under social security law, it is error for the ALJ to not give that agency's finding of disability great weight." *Hughes v. Comm'r of Soc. Sec. Admin.*, 486 F. App'x 11, 16 (11th Cir. 2012) (citing *Falcon*, 732 F.2d at 831).

Here, the ALJ stated he considered the statement by Plaintiff's father, Joseph E. Hacia, Jr., wherein he applied to the DOD to have his son's eligibility continued under the Incapacitation Dependency eligibility for continuous medical coverage with Tricare (Tr. 22). The ALJ stated, "While the DOD may consider the claimant disabled under Army Regulations 600-8-14, this is not binding on the undersigned or Social Security due to the Army's more lenient nature." *Id.* Thus, the ALJ stated he gave "limited weight" to the DOD finding. *Id.*

Relying on the decision in *Freese v. Astrue*, Plaintiff argues the ALJ was required to evaluate the DOD's standards rather than summarily state the standards are different from those of Social Security and therefore not binding. Case No. 8:06-cv-1839-T-EAJ,

2008 WL 1777722 (M.D. Fla. Apr. 18, 2008). In *Freese*, the court found the ALJ failed to apply the correct legal standard with respect to the plaintiff's award of disability retirement benefits through the Federal Employee Retirement System ("FERS"). *Id.* at *3. The court noted the record contained evidence of the plaintiff's FERS disability determination, and the ALJ only cursorily mentioned the determination when he stated it was not binding because it was based on different laws and regulations. *Id.* at *2. The ALJ's opinion contained no discussion of the proper weight to be afforded such evidence and no analysis of the two agencies' definitions of disability. *Id.* Accordingly, the case was remanded for further administrative proceedings. *Id.* at *3.

In the instant case, the Commissioner argues the DOD's finding of incapacitation appears to be solely predicated on a doctor's statement to that effect, and thus the standards of proof for a finding of incapacitation by the DOD and disability under the Social Security Act are "markedly different" (Doc. 23 at 6-7). Additionally, the Commissioner argues the ALJ did more than just state the other governmental agency's determination is not binding because it is based on a different standard; rather, the ALJ indicated how the standard is different, that is, the DOD's standard is "more lenient." *Id.* at 7.

Upon consideration, the undersigned agrees with the Commissioner. The DOD's definition of an incapacitated dependent is not construed in a similar manner as social security law. The DOD considers a child over the age of twenty-one to be a dependent of a service member, and thus eligible to receive an identification card, if the child is "incapable of self-support because of a mental or physical incapacity." In order to obtain an identification card as an incapacitated dependent, the service member need

11

only submit a current physician's statement verifying the adult child is under a permanent or temporary medical incapacitation. In contrast, under the Social Security Act, the ultimate issue of disability is left to the determination of the Commissioner, and a statement by a medical source that a claimant is "disabled" or "incapacitated" is not binding on the ALJ. 20 C.F.R. § 404.1527(e). The ALJ correctly described the Army's standard as "more lenient" than the Social Security disability determination process. This case is therefore distinguishable from *Freese* because here the ALJ considered the Army's decision, stated the weight he assigned to the exhibit, and provided a brief explanation of his reasoning, i.e. the "more lenient nature" of the determination made under Army Regulation 600-8-14. As the Commissioner suggests, this case is therefore more analogous to *Pearson v. Astrue*, 271 F. App'x 979 (11th Cir. 2008) (per curiam). In *Pearson*, the Eleventh Circuit found the record supported the conclusion of the ALJ that, although the plaintiff received a total disability rating by the Veterans Administration, he did not qualify for Social Security benefits. *Id.* at 980. The circuit court found the ALJ considered the rating in his decision and correctly explained that the plaintiff had to satisfy a more stringent standard to be found disabled under the Social Security Act. *Id.* at 981.

      The undersigned finds substantial evidence supports the ALJ's decision to give "limited weight" to the Army's decision that Plaintiff was entitled to a dependent identification card and continued medical coverage. The evidence submitted by Plaintiff regarding the Army's determination of his eligibility is limited to an application for an identification card with a stamp that indicates "Dependency Care [is] established for Medical care" but provides no basis for that determination, and a statement by Plaintiff's

father that he was approved for continued medical care on the basis of a physician's statement "that he has a physical incapacity and disability." The physician's statement utilized by the Army is not identified or attached to the exhibit.[4] In any event, as discussed above, a physician's statement that Plaintiff has a physical incapacity or disability is not binding on the ALJ under social security law. The ALJ must make his determination based on all of the relevant evidence of record. 20 C.F.R. § 404.1527(d). Here, the ALJ considered and discussed the relevant evidence, including statements from Plaintiff's treating physician, and found "the medical evidence does not document a continuing impairment of incapacitating proportions" (Tr. 21). Plaintiff has not offered any additional evidence in conjunction with the Army's decision that would lead to a different conclusion than that reached by the ALJ. *See Hughes v. Comm'r of Soc. Sec. Admin.*, 486 F. App'x 11, 16 (11th Cir. 2012) (holding substantial evidence supported ALJ's decision to give little weight to the State of Florida's disability determination where plaintiff submitted only a single-page document that stated he had been approved for regular disability retirement but provided no explanation for the basis of that determination, and where plaintiff offered no specific or additional evidence in conjunction with the State's determination that would lead to a different conclusion than that reached by the ALJ). Accordingly, the undersigned finds no error with respect to the ALJ's consideration of the DOD's decision that Plaintiff was entitled to a dependent identification card and continued Tricare medical insurance coverage.

---

[4] Although it is not clear, it appears likely that the physician's statement referred to by Mr. Hacia is the treatment record from Dr. Bozorg that is addressed "To Whom It May Concern" and is dated September 27, 2011 (Tr. 384-85). In this statement, Dr. Bozorg notes Plaintiff has intractable epilepsy but is "doing well and is seizure free" on his medications (Tr. 384). Dr. Bozorg states Plaintiff has "memory issues" and "is unable to support himself at this time due to condition." *Id.*

### B. Whether the ALJ erred by failing to give great weight to the opinion of Plaintiff's treating physician, Dr. Ali M. Bozorg

The ALJ must base his RFC assessment on "*all* of the relevant evidence in the case record." SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. 1996) (emphasis added); *see also Nguyen v. Chater*, 172 F.3d 31, 34 (1st Cir. 1999) (holding an ALJ must base his RFC assessment on all relevant evidence including observations of treating physicians and others, medical records, and the description of the claimant's limitations). Social Security Ruling 96-8p further provides, "The adjudicator must consider all allegations of physical and mental limitations or restrictions." *Id.*

The Eleventh Circuit has noted that the focus of any RFC assessment is on the doctors' evaluations of a claimant's condition and the resulting medical consequences. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An ALJ must consider and evaluate every medical opinion received. 20 C.F.R. § 404.1527. In assessing the medical evidence, the ALJ must "state with particularity the weight he gave the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The weight afforded a medical source's opinion depends upon the evidence the medical source presents to support her opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source, and other factors. 20 C.F.R. § 404.1527. The ALJ may reject the opinion of any medical source when it is inconsistent with the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).

It is well established in the Eleventh Circuit that, generally, substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is "good cause" to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards v.*

14

*Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991).  The Eleventh Circuit has concluded "good cause" exists when a treating physician's opinion is: (1) not bolstered by the evidence; (2) contrary to the evidence; or (3) inconsistent with the treating physician's own medical records.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error."  *Lewis*, 125 F.3d at 1440.  "Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence," a reviewing court cannot "disturb the ALJ's refusal to give the opinion controlling weight."  *Carson v. Comm'r of Soc. Sec.*, 300 F. App'x 741, 743 (11th Cir. 2008).

In his opinion, the ALJ stated he considered the RFC questionnaire completed by Dr. Bozorg and found it reasonable to conclude that the majority of Dr. Bozorg's answers were based on the subject reports of Plaintiff and/or his mother (Tr. 21).  In support of this conclusion, the ALJ noted Dr. Bozorg's own treatment records documented that Plaintiff was not following recommended treatment because he hoped to qualify for disability.  *Id.*  The ALJ also noted Dr. Bozorg's treatment records did not reflect that postictal manifestations lasted for forty minutes to an hour following a seizure.  *Id.*  The ALJ found Dr. Bozorg's answers to be contradictory because Dr. Bozorg opined Plaintiff's symptoms interfered with concentration and attention on a frequent basis even though he only reported one seizure per month.  *Id.*  Additionally, Dr. Bozorg left unanswered the question as to how many days per month Plaintiff would miss work.  *Id.*  The ALJ stated, "[t]here always exists the possibility that a doctor may express an opinion in an effort to assist his patient with whom he sympathizes. While it

15

is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the doctor's own treating records, i.e., the type of epilepsy (IGE) is usually genetic and typically easily controlled with appropriate medications." *Id.* The ALJ stated Dr. Bozorg's opinion was "unique and seemingly contradictory" to Dr. Bozorg's own observations and previous statements contained in letters to other physicians or his own treating records (Tr. 22). Thus, the ALJ concluded it was "difficult to assign significant weight to Dr. Bozorg's opinion, particularly in light of the fact that he repeatedly reports (within his treating records) that the seizures are well controlled with medication." *Id.*

Plaintiff argues the ALJ committed error by failing to give great weight to the opinion of Dr. Bozorg. Plaintiff contends Dr. Bozorg "opined that as a result of Hacia's intractable primary generalized epilepsy and monthly generalized tonic clonic seizures which occur during the daytime and his 24 hour postictal recovery period he would randomly miss work 2 days per month" (Doc. 20 at 13). Plaintiff contends the lay testimony elicited by the ALJ supports the medical opinion of Dr. Bozorg, and it was not reasonable for the ALJ to assume a doctor would lie for his patient.

The Commissioner responds that Dr. Bozorg never opined Plaintiff would randomly miss two days of work per month. The Commissioner argues the ALJ properly discounted Dr. Bozorg's opinion because it was unsupported by and inconsistent with his own treatment notes.

An ALJ may consider evidence of bias, but may not discredit a treating physician's opinion based on an unsupported assumption that the physician is biased in favor of and sympathetic to his patient. Such an assumption is contrary to well-

16

established law requiring that a treating physician's opinion be given substantial weight absent clearly articulated good cause for a contrary finding.  *See Shuren v. Comm'r of Soc. Sec.*, No. 6:11-cv-1191-Orl-GJK, 2012 WL 4194665, at *10 (M.D. Fla. Sept. 19, 2012) ("In regard to the ALJ's musings about an inherent possibility for sympathy bias in the doctor-patient relationship, that notion is sheer speculation and is contrary to well-established law requiring that a treating physician's opinion be given substantial weight absent clearly articulated good cause for a contrary finding."); *Anderson-Wilson v. Astrue*, No. 1:11-cv-57-WCS, 2012 WL 161763, at *13 (N.D. Fla. Jan. 18, 2012) (treating physician's sympathy for patient and desire to alleviate suffering does not detract from a physician's credibility); *McCants v. Astrue*, 493 F.Supp.2d 1217, 1231 (S.D. Ala. 2007) (ALJ's suggestion that treating physician's findings were based on sympathy was not supported by record and amounted to "little more than conjecture and speculation").  Here, the ALJ suggested "[t]here always exists the possibility that a doctor may express an opinion in an effort to assist his patient with whom he sympathizes" (Tr. 21).  The ALJ acknowledged it was difficult to confirm the presence of such motives, but it was "more likely in situations where the opinion in question departs substantially from the doctor's own treating records," with the implication that this case is such a situation because Dr. Bozorg's records indicated Plaintiff's epilepsy was typically easily controlled with appropriate medications.  The ALJ further acknowledged that, pursuant to the Regulations, "medical findings and other evidence must be considered in order to determine if, and to what extent, such opinion is supported thereby" (Tr. 22).

While the mere possibility of bias due to the doctor-patient relationship does not provide good cause to discount a treating physician's opinion, the undersigned agrees with the Commissioner that the ALJ otherwise provided sufficient reasons to discount Dr. Bozorg's opinion. The ALJ did not discount Dr. Bozorg's opinion on mere speculation that he was biased in favor of Plaintiff, but rather the ALJ focused his discussion on whether Dr. Bozorg's opinion was supported by or contrary to the objective medical evidence in the record, and whether it was inconsistent with his own treatment records. The ALJ identified several ways in which Dr. Bozorg's opinion was unsupported by and inconsistent with his own treatment notes. Specifically, the ALJ noted Dr. Bozorg documented that Plaintiff was not following his recommended treatment because he was hoping to qualify for disability; thus, the allegation that Plaintiff would experience one seizure per month was inconsistent with Dr. Bozorg's treating records that Plaintiff's epilepsy was well-controlled with medication and breakthrough seizures only occurred due to noncompliance.[5] The ALJ also noted Dr. Bozorg's statement that postictal manifestations typically last forty minutes was not documented in his treatment records. Additionally, the ALJ noted Dr. Bozorg's answers within the questionnaire were internally inconsistent because Plaintiff reported only one seizure a month, but Dr. Bozorg opined resulting symptoms would interfere with concentration and attention on a frequent basis. The ALJ concluded Dr. Bozorg's opinion was contradicted by his own observations, previous statements made in letters to other physicians, and his own treating records, and was inconsistent with his

---

[5] Dr. Bozorg indicated in the questionnaire that Plaintiff was compliant with taking his medications, even though he had documented several times in his treatment records that Plaintiff's breakthrough seizures were the result of skipping dosages of his medication.

repeated reports that Plaintiff's seizures were well-controlled on medication. The undersigned finds the reasons provided by the ALJ for giving less than significant weight to Dr. Bozorg's opinion are supported by the record. Accordingly, the ALJ did not err in his consideration of Dr. Bozorg's opinion.

## IV. CONCLUSION

For the foregoing reasons, the undersigned finds the ALJ's decision is supported by substantial evidence and is based upon the proper legal standards. Accordingly, it is hereby

**RECOMMENDED**:

The Commissioner's decision be **AFFIRMED**.

**DONE AND ENTERED** in Jacksonville, Florida this 14th day of May, 2014.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record